N. EDWIN ANTIGNANI, ADMINISTRATOR (ESTATE OF NANCY ANTIGNANI) *v.* BRITT AIRWAYS, INC.
(AC 18663)

O'Connell, C. J., and Hennessy and Daly, Js.[1]

Argued January 27—officially released June 6, 2000

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Frederick C. Schafrick*, with whom were *Beverly S. Knapp* and, on the brief, *L. Douglas Shrader*, for the appellant (defendant).

*Joel T. Faxon*, with whom was *Carey B. Reilly*, for the appellee (plaintiff).

*Opinion*

HENNESSY, J. In this wrongful death action, the defendant, Britt Airways, Inc., appeals from the judgment, rendered after a jury trial, in favor of the plaintiff, N. Edwin Antignani, administrator of the estate of the decedent, Nancy Antignani (Antignani). On appeal, the defendant claims that the trial court improperly (1) ruled that the Workers' Compensation Act[2] (act) did not apply to this action and (2) denied the defendant's motions for a directed verdict and to set aside the verdict because the plaintiff's action was barred by the act.[3] We reverse the judgment of the trial court.

The jury reasonably could have found the following facts. Antignani was employed by the defendant[4] as an airport agent at Sikorsky Memorial Airport in Bridgeport. Her duties consisted of passenger ticketing, customer service and various activities that were performed on the airport ramp, including loading luggage on and off aircraft, escorting passengers to and from aircraft, guiding arriving and departing aircraft with hand signals, and placing and removing cones and chocking blocks from aircraft.

---

[2] General Statutes § 31-275 et seq.

[3] Because we reverse the trial court's decision as to the first claim on appeal, we need not reach the second claim.

[4] The defendant, Britt Airways, Inc., was owned and operated by Continental Express.

On the morning of October 12, 1991, Antignani was at the airport on her scheduled day off because she planned to make a personal trip as a nonrevenue passenger on a flight scheduled to depart that morning.[5] Tara Harper, the airport agent on duty that morning, informed Antignani that another airport sales agent had called in sick and the ramp attendant had overslept. Antignani then offered to assist Harper with the baggage duties and other ramp responsibilities. Antignani briefly boarded the aircraft to stow her personal belongings and to identify herself to the flight attendant, Cheri Neptune. Neptune and Antignani then loaded the passenger luggage onto the aircraft. After completing the baggage loading, Antignani told Neptune that she would see her in one minute. Antignani then walked toward the front of the aircraft.[6] Thereafter, the crew heard a "thump" noise. They immediately went to investigate the cause of the noise and discovered Antignani's body under the right propeller of the aircraft. There is no dispute that Antignani was fatally injured when she was struck by the blades of the moving propeller on the right side of the aircraft.

The plaintiff commenced an action against the defendant alleging that the defendant's negligence caused Antignani's death. The defendant filed an answer and two special defenses, responding that (1) Antignani was contributorily negligent and (2) the action was barred under the exclusivity provision of the act. The defendant thereafter moved for summary judgment on the ground that it was entitled to judgment in its favor as a matter of law because the action was barred under

[5] All of the defendant's employees were permitted, as a benefit of their employment, unlimited personal travel on any Continental Express, Continental Airlines or Continental Micronesia flight, on a space available basis, for a nominal service charge.

[6] It is claimed by the defendant that Antignani was going to the front of the aircraft to remove the chocking block from the front wheel. The plaintiff disputes this claim.

the act. The court denied the motion, ruling that there were material facts in dispute, i.e., whether Antignani was performing work duties at the time of her injury.

Before trial began, the plaintiff filed a motion in limine seeking to exclude the defendant's workers' compensation special defense. This motion, however, was withdrawn. The defendant also filed a motion pursuant to Practice Book § 15-1 to set the order of trial and to decide the issue of law of whether the action was barred by the act. During the hearing on the motion, the court ruled that as a matter of law, Antignani's death did not occur during the course of her employment because she was injured on her day off from work and, therefore, the act was not applicable to the action.[7] The defendant made an offer of proof alleging facts that would demonstrate that Antignani was in fact acting during the period

[7] The court's action had the effect of striking the defendant's special defense of exclusivity under the act. The following colloquy took place during the hearing:

"The Court: This court is not prepared to extend the comings and goings to a vacation day, and the court, therefore, as a matter of law, concludes that this incident did not occur within the period of employment, and it is not, therefore, necessary to address the other two issues or factors [governing whether an injury arises out of and in the course of employment] because there can be no workers' compensation—there can be no action under the workers' compensation [act] where one of those factors is missing. And therefore, the court concludes that as a matter of law, the workers' compensation defense may not be raised in this case. It is inapplicable for the reasons I've indicated, and if either party wants a copy of my decision, they can ask for a transcript of the—of my remarks here.

"[Defense Counsel]: May I request the court's permission to make an offer of proof of facts in support of the defense?

"The Court: Certainly.

"[Defense Counsel]: Thank you.

"[Plaintiff's Counsel]: Your Honor, we would just ask, consistent with the court's decision, [that] the defense then be stricken from the pleading so that when they—

"The Court: It may be, but I can inform the counsel that it is not my present intention to submit the pleadings to the jury. That may change later on. If it does, I would ask counsel to submit to me clean pleadings for the purposes of—solely for the purposes of submitting them to the jury."

of her employment. The court was unpersuaded. The jury therefore was not given the option of considering the defendant's workers' compensation special defense.

At the close of the plaintiff's evidence, the defendant moved for a directed verdict, claiming that the action was barred by the exclusivity provision of the act. The motion was denied. The jury rendered a verdict for the plaintiff, awarding damages for negligence in excess of $600,000. The defendant moved to set aside the verdict, and the court denied the motion.

On appeal, the defendant claims that the court improperly ruled, as a matter of law, that Antignani was not in the course of her employment and that therefore, the exclusivity provision of the act did not apply to the present action. We agree.

Our standard of review for the legal conclusion of a trial court is well established. " 'The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. Practice Book § [60-5]; *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 752, 601 A.2d 1005 (1992); *Zachs* v. *Groppo*, 207 Conn. 683, 689, 542 A.2d 1145 (1988); *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).' " *SLI International Corp.* v. *Crystal*, 236 Conn. 156, 163, 671 A.2d 813 (1996). "[U]nless the case lies clearly on the one side or the other the question whether an employee has so departed from his employment that his injury did not arise out of it is one of fact." Internal quotation

marks omitted.) *Kolomiets* v. *Syncor International Corp.*, 252 Conn. 261, 265, 746 A.2d 743 (2000).

"It is an axiom of [workers'] compensation law that awards are determined by a two-part test. The [claimant] has the burden of proving that the injury claimed arose out of the employment and *occurred in the course of* the employment. There must be a conjunction of [these] two requirements . . . to permit compensation. . . . The former requirement relates to the origin and cause of the accident, while the latter requirement relates to the time, place and [circumstance] of the accident. . . .

"In order to establish that [the] injury occurred in the course of employment, the claimant has the burden of proving that the accident giving rise to the injury took place (a) within the period of the employment; (b) at a place [the employee] may reasonably [have been]; and (c) while [the employee was] reasonably fulfilling the duties of the employment or doing something incidental to it. . . . *Mazzone* v. *Connecticut Transit Co.*, [240 Conn. 788, 792–93, 694 A.2d 1230 (1997)]." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Kolomiets* v. *Syncor International Corp.*, supra, 252 Conn. 266–67. "[I]n this case the defendant assumed the burden of proof on the issue of whether the injury arose out of and in the course of employment by pleading the [act] as a special defense. *Atlantic Richfield Co.* v. *Canaan Oil Co.*, 202 Conn. 234, 237, 520 A.2d 1008 (1987); see Practice Book [§ 10-50]." *Pagani* v. *BT II, Ltd. Partnership*, 24 Conn. App. 739, 745, 592 A.2d 397, cert. dismissed, 220 Conn. 902, 593 A.2d 968 (1991).

In this case, the court concluded that the employer failed to satisfy the first part of the course of employment test because Antignani's death occurred while she was on her day off from work. In reaching this

conclusion, the court relied on *Mazzone* v. *Connecticut Transit Co.*, supra, 240 Conn. 788, in deciding as a matter of law that because the time of the injury was not in "close temporal proximity" to Antignani's workday, she was not in her period of employment.

"With respect to the time requirement portion of the 'in the course of employment' test, [our Supreme Court] previously [has] held that '[t]emporary suspension of work by an employee for a permitted rest period, or lunch hour, or for satisfying the wants of nature . . . have not been generally held sufficient to break the continuity of the employment.' " Id., 794. In *Mazzone*, the court concluded that an employee injured during an unpaid lunch hour was still in the course of employment. Id. In so concluding, the court relied on *McNamara* v. *Hamden*, 176 Conn. 547, 551, 398 A.2d 1161 (1979), for the proposition that " '[t]he exact time [of injury] is not significant' for purposes of compensation, so long as injury takes place on premises and in *close temporal proximity to work day* . . . ." (Emphasis added.) *Mazzone* v. *Connecticut Transit Co.*, supra, 240 Conn. 794.

In the present case, it is not disputed that Antignani was injured on her day off. Rather than having an injury occur five minutes before the workday started or during an unpaid lunch break, Antignani was injured one and one-half days after her last workday had ended. Our inquiry on determining whether she was in the course of her employment, however, does not end here.

Before the court reached its final conclusion that Antignani was not within her period of employment, counsel for the employer made an offer of proof of facts in support of the workers' compensation defense. During this offer of proof, counsel stated that included within the job description and requirements of an airport agent at Continental Express is an ongoing expec-

tation that employees must volunteer to help out whenever a need arises at any Continental Airlines station anywhere in the world. See footnote 5. In addition, any act of volunteering is done in accordance with a management policy known as "teamwork," in which employees are instructed that when they see a job that needs to be done, whether they are on duty or off duty, it is part of their job responsibility to volunteer to do that job. These voluntary requirements are part of job performance appraisal, and voluntary work is significant when the employee is considered for promotion and salary increases. It was further offered that Antignani knew of these requirements, had volunteered on previous occasions and had her volunteer performance appraised by her supervisor. Nonetheless, the court concluded that because there was no fact in dispute that Antignani was on her day off from work, she was, as a matter of law, not within her period of employment. We do not agree that the court can make this determination as a matter of law when there are relevant facts in dispute.

Because of the complexity of factual variations surrounding workers' compensation, special tests have evolved in our jurisprudence. "For example, in the going and coming cases, it is necessary for the commissioner to find a benefit to the employer before compensation will be awarded." *McNamara* v. *Hamden,* supra, 176 Conn. 552. "Because in these 'going and coming' cases the injury has occurred to an employee acting outside the place and period of employment, in situations *tangential* to employment 'the need arose to reach out for the additional element of employer benefit to make up for the fact that employees going to or coming from work do not satisfy both of the first two course-of-employment requirements, place and period of employment.' [Id., 553.] Consequently, when an employee has sustained an injury while traveling to and from work,

but there also existed some work related recreational or social aspects, as in traveling to a union sponsored picnic, the benefit test has been applied and we have held that [an] employee could fall within the act's coverage by demonstrating that the activity that took him outside the place and period of employment had been for the employer's benefit.[8] *Williams* v. *State*, 152 Conn. 692, 211 A.2d 700 (1965); see *Smith* v. *Seamless Rubber Co.*, 111 Conn. 365, 368–69, 150 A. 110 (1930). This 'independently convincing association with the employment' is needed in order to 'overcome the initial presumption of disassociation with the employment established by the time and place factors.' 1A A. Larson & L. Larson, [Workmen's Compensation (1996)], § 22.11, p. 5-92." *Spatafore* v. *Yale University*, 239 Conn. 408, 421–22, 684 A.2d 1155 (1996).

"[W]e have moved beyond a mere employer benefit test to one including employer approval or acquiescence when the employer sanctioned activity regularly occurs on the premises; *McNamara* v. *Hamden*, supra, 176 Conn. 554–55 . . . ." *Spatafore* v. *Yale University*, supra, 239 Conn. 422 n.13. "Experts in the field of workmen's compensation law have pointed out the inconsistency of using the employer benefit test in situations such as recreation, personal comfort, and horseplay cases where an employer-sanctioned activity regularly occurs on the premises. Both Professor Larson and

---

[8] We recognize that with the enactment of Public Acts 1993, No. 93-228, § 1, the legislature amended the act and added a provision that precludes "an injury to an employee which results from his voluntary participation in any activity the major purpose of which is social or recreational, including, but not limited to, athletic events, parties and picnics, whether or not the employer pays some or all of the cost of such activity . . . ." General Statutes § 31-275 (16) (B) (i). This, however, does not change the analysis in *McNamara* v. *Hamden*, supra, 176 Conn. 552–53, which provides that in activities occurring outside the place and period of employment, excluding those activities enumerated in § 31-275 (16) (B) (i), the benefit test can be applied.

Professor Davis advocate a test of employer acquiescence or approval in such cases, whether they be recreation, personal comfort, or horseplay situations. '[I]t should not be necessary [in such cases] to bolster the case by adding proof of employer sponsorship of the activity or employer benefit therefrom. It is generally held sufficient that the activity is an accepted and normal one, since it thereby becomes a regular incident and condition of the employment.' 1A [A. Larson, Workmen's Compensation Law (1978)] § 22.11, p. 5-72." *McNamara* v. *Hamden*, supra, 554–55.

Given the fact that workers' compensation can be awarded to employees who are injured playing Ping-Pong on the premises five minutes before the start of the scheduled workday; id., 548; or employees who were injured off the employer's premises during activities required by the employer outside the period of employment; *Spatafore* v. *Yale University*, supra, 239 Conn. 421; we are hard pressed to conclude that an employee who is on the employer's premises on her day off from work and volunteering to perform her work duties by the demand and with approval of her employer, is not in the period of employment as a matter of law. Although it is significant that Antignani was not working on a scheduled workday when her death occurred, facts of an "independently convincing association with the employment" have been alleged that may "overcome the initial presumption of disassociation with the employment established by the time . . . factor." (Internal quotation marks omitted.) Id., 421–22.

We cannot conclude, however, that Antignani was in the course of her employment because there are facts in dispute as to the requirements of her job. Accordingly, we hold that the court was incorrect in deciding that, as a matter of law, Antignani was not acting in the course of her employment. Because a determination

of this issue is one of fact, we remand the case for a new trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.