[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the court on the plaintiffs' application for a prejudgment remedy dated May 18, 2001. The plaintiffs, Dana and David Evans (the "Evans"), reside in the town of Glastonbury on property abutting a parcel of land for which the defendant Testa Development, Inc. ("Testa Development"), applied to the Town of Glastonbury Planning and Zoning Commission (the "TPZ") for approval of a five-lot subdivision.
On or about July 18, 2000, the TPZ approved Testa Development's subdivision application. On or about August 1, 2000, the Evans filed an appeal of the TPZ decision approving the subdivision. On or about August 15, 2000, while the Evans' appeal was pending, Testa Development, allegedly acting through its principal shareholder the defendant Sebastian Testa ("Sebastian Testa"), and its attorney the defendant, Glen T. Terk ("Attorney Terk"), filed a lawsuit against the Evans alleging negligence, tortious interference with business relationships and vexatious litigation. The factual basis of the lawsuit was the Evans' appeal of the subdivision approval.
On September 14, 2000, the Evans, through their attorney, informed the defendants of their position that the action brought by the defendants was without factual or legal merit. On December 27, 2000, the Evans filed a motion for summary judgment, which motion was granted on January 25, 2001. CT Page 13468-if
The court's memorandum of decision granting summary judgment stated that the first count, alleging that the Evans negligently filed an appeal of the decision of the TPZ does not state a cause of action under Connecticut law. It further states that both the second count, alleging tortious interference with a contract, and the third count, alleging vexatious litigation, require an allegation that a judgment had been rendered in the plaintiffs' favor. As the Evans' TPZ appeal was still pending and therefore judgment had not entered in Testa Development's favor, the court granted the Evans' motion for summary judgment.
On March 21, 2001, the Evans filed a complaint against the defendants alleging vexatious litigation. On May 18, 2001, the plaintiffs filed an application for a prejudgment remedy to attach property of the defendants in the amount of $21,000.00 to secure any judgment they might obtain. At the hearing on the plaintiffs' motion for a prejudgment remedy, the plaintiffs amended their prayer for relief and requested a prejudgment remedy in the amount of $37,439.00.
In order to grant a prejudgment remedy the court must find probable cause to believe that the defendant is liable to the plaintiff in the amount of the prejudgment remedy sought as alleged. General Statutes § 52-278d (a). Probable cause has been defined as a bonafide belief in facts essential under the law for the action and such as would lead a reasonable, prudent person to entertain such a belief. Dufraineu v.Commission on Human Rights Opportunities, 236 Conn. 250, 261,673 A.2d 101 (1996); Norse Systems, Inc. v. Tingley Systems, Inc.,49 Conn. App. 582, 594, 715 A.2d 809 (1998). As stated above, this is an action alleging vexatious litigation.
Under our law, any person engages in vexatious litigation when one commences and prosecutes any civil action or complaint against another, in his name or in the name of others, without probable cause. General Statutes § 52-568. Therefore, in order for the court to grant the plaintiffs' application for a prejudgment remedy, the court must have a bonafide belief in facts essential under the law and sufficient for a reasonable person to believe that the defendant commenced and prosecuted litigation action against the Evans' without having a bonafide belief in facts essential under the law and sufficient for a reasonable person to believe that the vexatious litigation claim could be sustained.
First, the plaintiffs assert that the lawsuit filed by the defendants lacks probable cause because the Evans were immune from suit by virtue of the Noerr-Pennington doctrine. The Noerr-Pennington doctrine evolved from CT Page 13468-ig a trilogy of United States Supreme Court decisions, to wit: EasternRailroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127,81 S.Ct. 523, 5 L.Ed.2d 464, reh. denied, 365 U.S. 875, 81 S.Ct. 899,5 L.Ed.2d 864 (1961); United Mine Workers of America v. Pennington,381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); California MotorTransport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609,30 L.Ed.2d 642 (1972). The doctrine has been accepted and applied in Connecticut at the trial court level for more than a decade. SeeConnecticut National Bank v. Mase, Superior Court, judicial district of Fairfield at Bridgeport, Docket Number 269180 (January 31, 1991, Flynn,J.); Abrams v. Knowles, Superior Court, judicial district of New London at Norwich, Docket No. 95287 (December 4, 1990, Axelrod, J.) (3 Conn. L. Rptr. 13);Yale University School of Medicine v. Wurtzel, Superior Court, judicial district of New Haven, Docket No. 275314 (November 9, 1990, Flanagan, J.). Nearly two decades ago the Second Circuit Court of Appeals predicted that our Supreme and Appellate Courts adopt the Noerr-Pennington and the sham lawsuit exemption when presented with the opportunity: "We believe that Connecticut's courts would be guided by the strong suggestions from the federal courts that imposing liability for the act of filing a non-sham lawsuit would present serious constitutional problems, and would construe Connecticut law to avoid those problems. Especially since Noerr-Pennington's statutory exemption is defined in terms of first amendment activity, we are confident that Connecticut's courts would carve out a similar exception to CUTPA and the common law, whether or not they believed that they were required to do so by the Constitution." Suburban Restoration Co., Inc. v. ACMAT Corp., 700 F.2d 98,102 (2d Cir. 1983). Indeed, our Appellate Court did adopt the Noerr-Pennington doctrine. Moreover, the appellate court applied Noerr-Pennington immunity from suit to persons appealing the decisions of planning and zoning commissions. Zeller v. Consolini, 59 Conn. App. 545,759 A.2d 376 (2000).
Our Supreme Court has said that the Noerr-Pennington doctrine protects the rights of individuals to petition their government and averts the chilling effect on the first amendment right to petition in zoning and other matters. Id., 553-54. The court went on to say that "[i]ndeed such a chilling effect can be a virtual deep freeze when individual citizens not versed in the legal system and without financial resources do not exercise potentially meritorious legal challenges for fear of costly and protracted, retributive litigation from opponents." Id., 554. "The Noerr-Pennington doctrine is a well established body of law applicable to a wide variety of situations involving petitioning activity, including local zoning and other municipal matters." Id. "Furthermore, failure to apply the Noerr-Pennington doctrine aggressively may create a `chilling CT Page 13468-ih effect' on the first amendment right to petition in zoning and other and other matters." Id., 553-54. Thus, the Noerr-Pennington doctrine as adopted in Connecticut grants those who appeal zoning decision immunity from suit based solely on the exercise of a right to appeal so as to avert the `chilling effect' on the first amendment right to petition in zoning matters.
The defendants assert that Noerr-Pennington immunity is not available to those who file sham petitions. That is a correct Statement of the law; however, assuming the defendants have raised such a defense, they bear the burden of proving their defense. Antignani v. Britt Airways,Inc., 58 Conn. App. 109, 114, 753 A.2d 366, cert. denied, 254 Conn. 911,759 A.2d 504 (2000), citing Atlantic Richfield Co. v. Canaan Oil Co.,202 Conn. 234, 237, 520 A.2d 1008 (1987); see also Practice Book §10-50; Pagani v. BT II, Ltd. Partnership, 24 Conn. App. 739, 745,592 A.2d 397, cert. dismissed, 220 Conn. 902, 593 A.2d 968 (1991). The defendants have presented no evidence to support a claim that the Evans' zoning appeal was a sham. They state that the appeal was dismissed; however, the fact that the appeal was not successful does not mean that it was a sham.
The second basis for their opposition to the plaintiffs' motion for a prejudgment remedy is the defendants' claim that Testa Development commenced its action against the Evans in good faith, believing that Testa Development had a valid cause of action when the suit was filed. Counsel for the defendants argued that Attorney Terk believed that a cause of action existed based on the memorandum of decision of the Honorable Robert Stengel in the case of F.N. Builders, Inc. v. Yellen, Superior Court, judicial district of Hartford at Hartford, Docket No. 595749, (May 11, 2000, Stengel, J.). His reliance was misplaced.
In of F.N. Builders, Inc. v. Yellen, supra., Attorney Terk filed a lawsuit alleging negligence, tortious interference with the business relationship and misuse of process for vexatious litigation against individuals who had appealed a zoning decision while their appeal was still pending. In its decision, the court specifically states that the vexatious litigation count was inadequately pleaded because that cause of action "requires the plaintiff to allege that the previous lawsuit terminated in his favor." Id., citing Zeller v. Consolini, supra,59 Conn. App. 424. Therefore, Attorney Terk knew that the vexatious litigation claim, if not the tortious interference claim, was not sustainable if the previous the appeal had not terminated and therefore Attorney Terk knew that there was no probable cause to assert that claim against the Evans when the defendants filed their suit. CT Page 13468-ii
The defendants argue that because Judge Stengel did not dismiss, but rather stayed the vexatious litigation count pending the resolution of the zoning appeal Attorney Terk believed there was probable cause for the vexatious litigation claim against the Evans. While that it is true that Judge Stengel stayed the vexatious litigation claim in that case, the fact that the court entered a stay in that case was not a reasonable basis for Attorney Terk to believe that a vexatious litigation claim was sustainable during the pendency of the underlying action. Attorney Terk knew that the court in F.N. Builders, Inc. v. Yellen, supra did not rule on the legal issue in question. On the contrary, the court entered a stay because the parties agreed to stay the claim. Therefore, his order was not a ruling on the merits of the sustain ability of the cause of action. Therefore the defendants did not have knowledge of facts sufficient to justify a reasonable person to believe that there were reasonable grounds for prosecuting the vexatious litigation claim against the Evans when it was filed.
The court need not address the merits of the other causes of action alleged in the defendants complaint against the Evans in order to decide this case. Where a complaint includes multiple counts, one of which is subject to a claim of vexatious litigation, a plaintiff may recover damages in an action for vexatious litigation based upon one inadequately pleaded cause of action even if others were adequately pleaded.DeLaurentis v. New Haven, 220 Conn. 225, 597 A.2d 807 (1991).
The defendants argued that the Evans' zoning appeal was dismissed. As stated earlier, by itself the dismissal does not strip the Evans of immunity; nor does it strip them of a cause of action against the defendants. The substantive rights of the parties were fixed on the date on which the Evans' cause of action accrued. Champagne v.Raybestos-Manhattan, Inc., 212 Conn. 509, 520-21, 562 A.2d 1100 (1989);Batchelder v. Tweedie, 294 A.2d 443, 444 (Me. 1972). The plaintiffs suffered a loss and their cause of action accrued on the day the defendants filed their specious lawsuit. Testa Development's lawsuit against the Evans was filed prior to the dismissal of the Evans' zoning appeal.
The circumstances which gave rise to this action are precisely the circumstances which the Noerr-Pennington doctrine was designed to address. The Evans petitioned their government, and while their appeal was still pending, the defendants filed a lawsuit which the defendants knew or should have known could not be sustained legally. CT Page 13468-ij
"Any person who commences and prosecutes any civil action or complaint against another, in his name or in the name of others . . . without probable cause" is liable to that person for twice their actual damages. General Statutes § 52-568. The plaintiffs have established through the May 18, 2001 affidavit of David Evans in support of the application for prejudgment remedy, the testimony of Mrs. Evans at the prejudgment remedy hearing and the exhibits pertaining to attorney's fees, that there is probable cause to believe that the plaintiffs have incurred $12,869.50 in legal expenses and will incur an additional $6,000.00 to bring this action to fruition. The court, having previously found that there was no probable cause for the defendants to commence its vexatious litigation action against the plaintiffs while the plaintiffs' zoning appeal was pending, finds that there is probable cause to believe that the plaintiffs would recover the double damages sought or $37,439.00.
The court does not find that the plaintiffs have established probable cause that they will recover against the defendant, Sebastian Testa. The plaintiffs cite Scribner v. O'Brien, Inc., 169 Conn. 389, 363 A.2d 160
(1975), in support of their position that Sebastian Testa is liable to them for the lawsuit filed by Testa Development. The facts of Scribnerv. O'Brien, Inc., supra, are distinguishable from the facts in the instant case. In Scribner, the defendant was the president of a construction company which entered into a contract with the plaintiff to build a home. The property on which the home was built was owned by the defendant individually and he was present on the property on a daily basis during the construction. The defendant personally undertook to supervise the construction and he failed to act in a reasonable manner in that undertaking. Sebastian Testa did not have a contractual relationship with the Evans nor was there any evidence presented to establish that he took any action in his individual capacity in connection with the suit. Therefore, Scribner v. O'Brien, Inc. supra, does not support the proposition that Sebastian Testa is personally liable to the Evans.
An attorney's advice that there is probable cause to commence an action constitutes a complete defense to vexatious litigation even if the advice was unsound or erroneous. Vandersluis v. Weil, 176 Conn. 353, 361,407 A.2d 982 (1978) Neither Attorney Terk nor Sebastian Testa were present at the hearing nor did either of them submit an affidavit. Accordingly, no testimony was introduced at the prejudgment remedy hearing, establishing what advice Attorney Terk gave to Testa Development or Sebastian Testa. No testimony was introduced to establish that Testa Development or Sebastian Testa relied upon Attorney Terk's advice. Therefore, while such a defense may exist, one was asserted. CT Page 13468-ik
With respect to Attorney Terk, counsel does not cite nor has the court found any legal authority supporting the proposition that a party cannot maintain a vexatious litigation action against an attorney who filed a lawsuit on behalf of a client. On the contrary, numerous cases hold that an attorney can be held liable for vexatious litigation. Mozzoochi v.Beck, 204 Conn. 490, 495, 497, 529 A.2d 171 (1987); see also Shea v.Chase Manhattan Bank, N.A., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 149647 (July 27, 2000, Tierney,J.) (27 Conn. L. Rptr. 579), aff'd, 64 Conn. App. 624, ___ A.2d ___ (2001); Milford v. Andresakis, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 47124 (October 30, 1998, Curran,J.) (23 Conn. L. Rptr. 285); Mozzochi v. Rankin, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 566674 (September 18, 1998, Berger, J.); Dean v. Norwalk Container, Inc., 1996 W.L. 434295; Mozzochi v. Rogers, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 526635 (September 22, 1995,Corradino, J.); Rutenberg v. Rosenblit, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 353700 (March 14, 1994,Hennessey, J.) (11 Conn. L. Rptr. 161). In fact, our Supreme Court has said that it "assumed without discussion that an attorney may be sued in an action for vexatious litigation, arguably because that cause of action has built-in restraints that minimize the risk of inappropriate litigation." Mozzochi v. Beck, supra, 495. Based upon the dicta inMozzochi v. Beck, supra, and the court's ruling in Vandersluis v. Weil, supra, 176 Conn. 361, as well as the clear and unambiguous language of the vexatious litigation statute, which does not exclude attorneys from its ambit, the court finds that an action for vexatious litigation may be maintained against an attorney who represented the plaintiffs' adversary in a prior action. Accordingly, the plaintiffs' application for prejudgment remedy in the amount stated is granted against the defendants, Testa Development and Attorney Terk.
Bryant, J.